## Commonwealth ex rel. *v.* Parsons, Appellant.

217    435
227    605
39SC 490

*Public officers—School controller—School law—Quo warranto—Ouster.*

Judgment of ouster is properly entered against a person claiming to be a school controller in a city, where it appears that there was no properly constituted ward of the city which he could represent, and that there was no election district in which votes could be cast for him for this office.

Not decided whether the Act of April 28, 1903, P. L. 332, is unconstitutional.

Argued Feb. 26, 1907. Appeal, No. 288, Jan. T., 1906, by defendant, from judgment of C. P. Lackawanna Co., May T., 1906, No. 63, on quo warranto in case of Commonwealth ex rel. W. R. Lewis, District Attorney, v. William Parsons. Before Fell, Brown, Mestrezat, Potter and Stewart, JJ. Affirmed.

Quo warranto to determine title to the office of school controller in the city of Scranton.

Edwards, P. J., handed down an opinion, the material portion of which was as follows:

Did the councils have the right to designate the annexed territory as the twenty-second ward?

This is a question somewhat difficult of solution. The city of Scranton became a second-class city in 1901. At that time it had twenty-one wards. As a third-class city it could not have more wards under any circumstances. Counsel for relator claims that this limitation as to the number of wards is still the law for Scranton and that Scranton as a city of the second class can never have more wards, however much it might grow in size and population, unless by means of some legislation not yet enacted when the decree of annexation was made in this case, or when the councils undertook to create the twenty-second ward. I incline to the other view. I think the limitation to twenty-one wards disappeared, in a legislative sense, when Scranton became a city of the second class. It, therefore, seems that there may be a twenty-second ward if created by the proper authority. This leads to the next question.

If Scranton can have more than twenty-one wards how can a new ward be created? The relator contends that there is only one way, to wit: by the method pointed out by the Act of May 23, 1874, P. L. 230, section two. This section applies to all cities and it provides that " wards in cities may be divided, or new wards therein created, by the court of quarter sessions of the proper county." When I first read the section I was disposed to agree with relator's counsel; but a closer examination thereof will show that it does not cover annexed territory, or in other words, the creation of a new ward out of a new territory. It provides that upon petition of 100 qualified electors, or of councils, praying for " a division of a ward, or for the erection of a new ward out of parts of two or more wards," the court shall appoint five commissioners to make report thereon. If the report is favorable " to such division or creation " an election shall be held in " the ward or wards proposed to be divided " and " if it appear that a majority of the votes . . . . are for a division the said court shall thereupon order and decree a division of the said ward or wards . . . . and shall number the new wards." Evidently this section does not contemplate the creation of a ward except by the division of other wards already in existence. It therefore follows that section two of the act of 1874 does not apply to the case at bar.

Is there any other general legislation applicable? Any legislation applying to all cities? I can find none except the annexation Act of April 28, 1903, P. L. 332, the constitutionality of which we have discussed in this opinion. The only reference in this act to the question of wards is to be found in the sixth section, and is in these words: "The territory annexed shall, as soon as practicable, be arranged into wards of the city to which it is annexed." By whom shall the territory be arranged into wards? By the city councils? The act does not say so, nor can that power be inferred from the words of the act.

The next question is: Is there any second class city legislation under which annexed territory can be created into a ward? The only legislation of this character is the recent Act of April 24, 1905, P. L. 307, authorizing the creation, division and consolidation of wards in cities of the second class. It would be premature now to discuss this act, as no action has been taken under it looking to the creation of a ward out of the annexed territory.

It is useless also to examine any third-class city legislation which may apply and which may have been preserved for cities of the second class by art. XX, sec. 1, of the Act of March 7, 1901, P. L. 20, wherein it is provided that laws relating to cities of the third class shall continue to apply to cities of that class which have passed or may pass into a city of the second class by reason of increase in population, except so far as such laws are supplied by, or are in conflict with, laws relating to cities of the second class. Nobody has invoked the benefit of such legislation in this case and I cannot, therefore, discuss the question.

The conclusion is plain that the annexed territory known in this case as "Lincoln Heights" can have no ward representation until it becomes a ward. It is not a ward yet. The city councils had no authority to make it into a ward.

The question of an election district.

"Lincoln Heights" has not yet been constituted into an election district. The constitution provides (art. VIII, section 2) that "townships and wards of cities or boroughs shall form or be divided into election districts . . . . in such manner as the Court of Quarter Sessions may direct." There is no

other way in which an election district·can be created, and the legislature cannot take away this power from the court.   There is no order of the court of quarter sessions of Lackawanna county constituting the annexed territory into an election district.   It follows, therefore, that no legal election has yet been held in the so-called twenty-second ward of Scranton.   There is no ward which the respondent can at present represent and no legal election district in which votes could be cast for him for school controller or for any other office.   On both grounds the respondent is out of court.

It may be a hardship for the voters residing on Lincoln Heights that they cannot have ward representation although the annexed territory is a part of the city; but the hardship was not created by the court.   At no time has the court been applied to for any action except to decree the annexation. Whatever might have been said about the creation of a ward I have no doubt that the annexed territory can be made into an election district.

It is clear, therefore, that judgment must be entered for the commonwealth upon the demurrer.

*Error assigned* was the judgment of the court.

*Edward W. Thayer*, with him *David J. Davis*, for appellant.

*M. J. Donahoe, T. A. Donahoe* and *James J. Powell*, for appellee, were not heard.

Per Curiam, April 1, 1907 :

It is conceded that judgment of ouster was properly entered against the defendant for the reasons that there was no properly constituted ward of the city of Scranton that he could represent as a school controller, and that there was no election district in which votes could be cast for him for this office. Whether the additional reason given by a majority of the court that the Act of April 28, 1903, P. L. 332, is both unconstitutional and void for uncertainty can be sustained, is a question not requiring decision at this time.

The judgment is affirmed.